IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TRAMETRICH DEMOND JOHNSON,

      Petitioner,

v.                                                    CASE NO. 1:13-cv-102-MP-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

      Petitioner initiated this case by fling a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254.   The Petition stems from

Petitioner's Alachua County jury-trial conviction of burglary of a dwelling,

for which Petitioner is serving a 30-year sentence.  ECF No. 1.  The

Respondent has filed a Response with relevant portions of the state-court

record, ECF No. 9.  Petitioner has filed a reply, ECF No. 17, and

supplemental replies and authority, ECF Nos. 19, 20, 21, 22, 25, 26, 27,

28.  Petitioner has also filed a motion for stay and abeyance pending the

conclusion of further state-court habeas corpus proceedings that Petitioner

says are pending in the Florida Supreme Court.  ECF No. 30.  Petitioner's

motion facially fails to establish that he satisfies the limited circumstances

under which a stay and abeyance of a federal habeas corpus case is warranted, and therefore the motion will be denied.[1]  Upon due consideration of the Petition, the Response, and the parties' memoranda, the undersigned recommends that the Petition be denied.[2]

## I. Background

Petitioner was charged by amended information with one count of burglary of a dwelling and one count of resisting an officer without violence. ECF No. 9, Exh. C.  The trial evidence that is relevant to the Petition may be summarized as follows.   David McClellan, a motor technician, testified that in the early morning hours of December 5, 2007, he was asleep in a customer's car that he was working on in his yard on Northeast 19th Street in Gainesville, Florida.  He was sitting in the car in order to protect equipment that was in the yard, including a pressure washer.  He was awakened by a noise from his neighbor's yard.  McClellan called out to the neighbor, Abraham McCray.  A person jumped over McClellan's chain-link

---

[1] As the Supreme Court held in *Rhines v. Weber*, a habeas proceeding may be stayed by the Court only in "limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  These circumstances include when Petitioner has shown "good cause for his failure to exhaust" and that "his unexhausted claims are potentially meritorious," and there must be "no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id*.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

fence and approached McClellan.  McClellan clearly could see the person

because there was a streetlight.  The person came within six feet of

McClellan, and McClellan asked him what he was doing.  The person

replied that he was trying to get hold of something he could get rid of so

that he could get high.  McClellan knew the person as "Meech" or "Cat

Eye".  McClellan told him to leave, and after a further exchange the person

told McClellan that if he identified him he would kill McClellan.  McClellan

called McCray; it took several calls to reach him.  McCray called the police.

When the police arrived, McClellan described the person and then

subsequently identified him for police.   McClellan identified the person in

open court as the Petitioner.    ECF No.9-3 at 24-41.

On cross-examination, defense counsel elicited testimony that

McClellan and McCray were good friends, and that McCray was not living

at the residence at the time.  McClellan testified that he had been

convicted of 14 felonies.  He testified that there is another house between

his house and McCray's, but that his view was not obstructed.  McClellan

admitted that he did not see Petitioner come out of McCray's house.  *Id*. at

41-51.

Abraham McCray testified that he was remodeling the house and did

not stay in it that night because it was cold.  He usually stayed at the house

on weekends and two or three nights a week.  On the night of the burglary,

McCray was staying at his wife's house, although he had been by the

residence after work at around 12:20 a.m. and observed no damage.

McClellan called him around 4:00 a.m. to say that someone was breaking

into the house.  McCray called the police on his way to the house.  He

noticed that a window screen was torn.  There was a broken window and a

brick below the window.  A fence across from the window was damaged.

Photos of the house and broken window were admitted into evidence.  *Id*.

at 51-62, 66-67.

On cross-examination, McCray testified that no windows had

previously been broken at the house, and that he paid McClellan to help

him with remodeling.  He testified that nothing had been taken from the

house.  *Id*. at 63-66.

GPD Officer Robert Concannon testified that he responded to a

burglary call to McCray's residence and observed a window with a torn

screen and broken window.   He identified photos of the wood-framed

window and a piece of concrete that was located on the ground below the

window.  Officer Concannon agreed that it would have been difficult, if not

impossible, to obtain fingerprints from the wood framing and piece of

concrete.  Officer Concannon received a description that the suspect was a

black male wearing white pants and a long-sleeve shirt, riding a red bike.

Concannon and an officer trainee went to an address about eight blocks

away and found a person who fit the description of the burglar as well as a

red bicycle.  Officer Concannon identified Petitioner in open court as the

person.  The officers detained Petitioner and McClellan was brought to

identify him.  *Id*. at 68-74.

On cross-examination, defense counsel elicited that Officer

Concannon did not try to take any fingerprints from the scene; he did not

know if other officers tried to lift prints.  Concannon did not check for

shoeprints.  He did not know whether entry was made into the residence or

if anything was taken.  *Id*. at 74-76.

Officer Steven Carter testified that he was working with Officer

Concannon on the night of the burglary.  McClellan gave them a

description of the suspect and that he left the area on a red bicycle.

Officer Carter observed the damaged window and a "concrete brick".  He

testified that it would be rare to get a fingerprint off of a chain-link fence.

Based on McClellan's description of the suspect, Carter and Concannon

went to the suspect's residence where they observed the suspect and a

red bicycle.  Carter identified the suspect as Petitioner.  Petitioner tried to

walk away from an officer and had to be restrained.  *Id*. at 78-89.

On cross-examination, defense counsel elicited that it did not appear that entry had been made into the house, and it did not appear that anything was taken.  *Id*. at 89-90.

Officer Jermaine Hutchinson testified that he responded to the burglary call and got a description of the suspect from McClellan. Hutchinson and another officer went to the suspect's address and found him banging on the door, trying to get inside.  Hutchinson identified the suspect as Petitioner.  He was angry and aggressive.  Hutchinson observed the red bicycle on the property.  Petitioner tried to jerk away while being detained, and pushed at Hutchinson's chest.  After restraining Petitioner, Hutchinson retrieved McClellan to identify him.  *Id*. at 91-102.

On cross-examination, defense counsel asked Hutchinson whether he investigated Petitioner's statements about where he had been that night.  The state objected to the testimony as self-serving hearsay, and at sidebar noted that such testimony would open the record to evidence of Petitioner's prior convictions, and the court sustained the objection. Counsel elicited testimony that according to the mittimus the burglary occurred at 5:14 a.m.   Hutchinson's report reflected that he encountered Petitioner at 7:00 a.m.  Hutchinson attempted to raise fingerprints at the scene but was unable to do so.  His investigation did not show that anyone

entered the residence or that anything was taken.  *Id*. at 102-04.

At the conclusion of the state's case, Petitioner elected not to testify and the court denied defense counsel's motion for a judgment of acquittal. *Id*. at 111.  Following closing arguments and the court's instructions to the jury, the jury deliberated and returned a verdict of guilty of burglary, with a special finding that the structure was a dwelling, and guilty of resisting an officer without violence.  *Id*. at 158.  Petitioner was sentenced to 30 years imprisonment as a habitual offender on the burglary conviction and to time served for resisting arrest.  ECF 9-1 at 118-23.

The First DCA affirmed *per curiam* without opinion.  *Johnson v. State*, 33 So.3d 37 (Fla. 1st DCA 2010).  Petitioner filed a motion for post-conviction relief and amended motions.  The motion was summarily denied in part, and denied in its entirety following an evidentiary hearing.  ECF No. 9-5 at 6-18, 119-25.  The First DCA affirmed *per curiam* without opinion. *Johnson v. State*, 109 So.3d 785 (Fla. 1st DCA 2013).  Petitioner also filed a petition alleging ineffective assistance of appellate counsel which was denied on the merits by the First DCA.  *Johnson v. State*, 79 So.3d 159 (Fla. 1st DCA 2012).[3]

---

[3]In addition, Petitioner filed an earlier petition for habeas corpus in the First DCA, which he voluntarily dismissed.  ECF No. 9, Exh. Q, R.  He also filed a motion to correct sentencing error pursuant to Fla. R. Crim. P. 3.800 (a), which was denied.  *Id*. Exh. X.

Petitioner then filed his federal habeas corpus petition.  The Petition raises the following eight claims: (1) and (2) trial counsel was ineffective for failing to impeach McClellan's testimony; (3) trial counsel was ineffective for failing to have a psychiatric evaluation of Petitioner; (4) trial counsel failed to provide a viable defense; (5) the trial court erred in failing to order a competency evaluation; (6) trial counsel failed to investigate his competency; (7) and (8) trial counsel failed to object to the prosecutor's "sly implications" regarding fingerprint and footprint evidence; and (9) trial counsel failed to investigate regarding McClellan's ability to see Petitioner and the lighting in the area.[4]

## II. Section 2254 Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.   Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the

---

Petitioner did not appeal.

[4]Claims 5-9 are not separately enumerated in the Petition but are set forth on attachment pages hand-numbered by Plaintiff as 6-14.  *See* ECF No. 1 at 13-21.

evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* ___ *U.S.* ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel

under *Strickland*[5]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

To prevail on a constitutional claim of ineffective assistance of

---

[5]*Strickland v. Washington*, 466 U.S. 668, 686 (1984).

counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.

### III.  Discussion

### A.  *Ground One: Ineffective Assistance – Impeachment of McClellan*

Petitioner contends that his trial counsel was ineffective for failing to impeach McClellan's testimony.  First, Petitioner contends that trial counsel should have impeached McClellan with the arrest mittimus.  Petitioner contends that at trial McClellan testified that he heard two noises coming from McCray's property and described the second noise as "wood breaking

or something like that."  Petitioner argues that this testimony is inconsistent with the arrest mittimus which reports that the witness heard a sound like someone climbing a fence.  ECF No. 1 at 5-6.

In rejecting this claim on postconviction review, the state court determined that counsel did not err by failing to attempt to impeach McClellan on this point because the statements were not inconsistent. ECF No. 9-5 at 10.  As Respondent points out, the state court's ruling is not unreasonable because the sound of "wood breaking or something like that" can also sound like someone climbing a fence.  ECF No. 9 at 10.  On this record, the state court's conclusion that the statements were not inconsistent was not an unreasonable determination of the facts.  *See* ECF No. 9 at 10; § 2254(e)(1); *Burt,* 134 U.S. at 15.

Further, the trial record, as summarized above, reflects that counsel cross-examined McClellan thoroughly, suggesting bias because he was friends with the victim, highlighting McClellan's felony conviction record, and eliciting testimony that McClellan never saw Petitioner exiting McCray's house.  ECF No. 9-3 at 42-49.  In light of the record as a whole, Petitioner has failed to show either deficient performance by counsel with respect to the statement in the arrest mittimus or that the result of the proceeding would have been any different had counsel attempted to

"impeach" McClellan with the statement.

Petitioner also contends that trial counsel should have impeached McClellan's trial testimony that he saw Petitioner jump over McCray's fence because that statement is not reflected in the arrest mittimus.  ECF No. 1 at 4, 7-8.  In rejecting this claim on postconviction review, the state court found that "McClellan notified police of what he saw at the time of the offense."  ECF No. 9-5 at 15.  The court cited to the arrest mittimus and the trial transcript.  The arrest mittimus reflects that McClellan told police that after hearing noises at McCray's property "like someone climbing a fence," he called McCray's name and then the Petitioner walked to McClellan's yard and threatened him.  ECF No. 9-1 at 33-34.   The state court found that the statement in the mittimus was not inconsistent with McClellan's trial testimony that Petitioner, who was well-known to McClellan, climbed over a waist-high fence into McClellan's yard.  The court determined that Petitioner failed to show either error by counsel or prejudice.  ECF No. 9-5 at 15.

On this record, the state court's finding that the statement in the mittimus is not inconsistent with McClellan's trial testimony is not unreasonable.  Further, in light of the record as a whole, Petitioner has failed to show that the result of the proceeding would have been any

different had counsel attempted to "impeach" McClellan with the statement in the mittimus.

The undersigned therefore concludes that Petitioner has failed to show that the state court's rejection of these ineffective-assistance claims was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Burt,* 134 U.S. at 15.

## B. Grounds Three , Five, and Six: Ineffective Assistance and Trial Error Regarding Competency

Petitioner argues that counsel was ineffective for failing to have a psychiatric evaluation performed prior to trial (ground three) and for failing to investigate his competency (ground five).  Petitioner also contends that the trial court erred by failing to have his competency evaluated (ground six).  ECF No. 1 at 9 (ground three), 13 (ground five), 14 (ground six).[6] Respondent contends that this ineffective-assistance claim is partially unexhausted because Petitioner never argued in state court that he was, in fact, incompetent at trial.  ECF No. 9 at 13.

---

[6]

Petitioner asserts that the Respondent failed to respond to his sixth claim, which he describes as a "direct appeal" claim.  ECF No. 19.  As noted above, Petitioner's claims are not clearly enumerated in the Petition.  Respondent filed a response directed to the ineffective-assistance part of this claim, which the Court has identified as Petitioner's third and sixth claims.  The Court has identified Petitioner's direct appeal claim regarding competency as his fifth claim.  The record is sufficient for the Court to rule on the merits of Petitioner's trial court error claim notwithstanding that the Respondent may have overlooked it as a separate claim.

In summarily rejecting this claim on postconviction review, the state

court held:

> Defendant alleges that trial counsel was ineffective for failing to
> have Defendant's competency evaluated. Prior to trial,
> Defendant's competency to proceed was raised as an issue.
> *See* Jury Selection Transcript at 3 (lines 1-25) -9 (lines 1-4), 11
> (lines 6-25)-12 (lines 1-20); Petition for Involuntary Treatment;
> Amended Order for Involuntary Treatment. It was ultimately
> determined that, other than Defendant's father's reference to
> his (Defendant's) history of drug addiction, there was no factual
> basis to have Defendant's competency evaluated. Notably,
> Defendant does not allege that he was actually incompetent to
> proceed to trial, only that counsel was ineffective for failing to
> have his competency evaluated. Thus, he fails to show either
> error or prejudice. This claim is without merit.

ECF No. 9-5 at

Prior to jury selection, the issue of Petitioner's competency to

proceed was raised based on a filing in the record that was made by

Petitioner's father but not ruled on.  The court inquired whether there was

"any reason to believe that this defendant is not competent to proceed?"

Defense counsel stated that "I've had conversations with Mr. Johnson

several times about this trial, and he seemed very competent to proceed to

me; very engaged in his defense and the strategy."  Counsel stated that

Petitioner's father had filed some paperwork to have him involuntarily

committed.  Petitioner stated that he was unaware of the filing, and further

stated that "I'm competent."  ECF No. 9-2 at 87.  Counsel suggested

moving for a continuance in order to obtain a psychiatric evaluation, and Petitioner responded "No, no."  *Id*.  Petitioner advised the court "I think you should disregard that, your Honor," and informed the court that he was evaluated by a psychiatrist following his first appearance.  *Id*.  at 88.  Defense counsel called the jail to confirm whether Petitioner had been evaluated.  *Id*. at 92-93.

The court then stated on the record that it had reviewed the petition filed by Petitioner's father relating to Petitioner's competency and substance abuse, and based on the representations of counsel had heard nothing to indicate there was a competency issue.  *Id*. at 95.  The court again inquired of counsel as to whether there was any basis for questioning Petitioner's competency, and both counsel responded that there was not.  Petitioner raised his hand to be heard by the court, and the transcript reflects that Petitioner laughed and stated "I'm ready to proceed."  *Id*. at 96.

On this record, the state court's finding that there was no factual basis to have Petitioner's competency evaluated is amply supported and plainly not unreasonable.  Petitioner points to nothing in the record that suggests he was, in fact, incompetent to proceed.  On this record, the undersigned concludes that Petitioner has failed to show that the state

court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Burt,* 134 U.S. at 15.[7]

Petitioner's claim that the trial court erred for failing to investigate his competency likewise lacks any factual support in the record.  He asserts that this claim was raised on direct appeal.  Petitioner references an amended order for involuntary assessment and stabilization that he says was entered following his first appearance, as well as the discussion on the record prior to jury selection regarding his competency.   ECF No. 1 at 13.  As summarized above, the issues raised by Petitioner were fully explored during that hearing.  Petitioner stated that he had been evaluated following his first appearance, and further stated that there was no basis for further evaluation or a continuance of the trial.   ECF No. 9-2 at 87-88, 96.  Plaintiff's conclusional assertion to the contrary in his Petition, *see* ECF No. 1 at 13, does not provide any basis for federal habeas relief.  Petitioner has failed to show that the First DCA's rejection of this claim on direct appeal was contrary to, or an unreasonable application of, federal law.

## C.  Ground Four: Counsel's Failure to Present a "Viable Defense"

Petitioner alleges that trial counsel was ineffective for failing to

---

[7]The Court can deny relief on the merits of a habeas corpus claim, notwithstanding any failure to exhaust it.  28 U.S.C. § 2254(b)(2).

provide a "viable defense."  ECF No. 1 at 9, 12.  Petitioner alleges that trial counsel's defense strategy rested on an erroneous interpretation of Florida's burglary statute and the standard jury instruction on burglary. Petitioner argues that counsel instead should have used a "sufficient defense strategy of discrediting state witness David McClellan."  Petitioner alleges that if counsel had properly discredited McClellan, the remaining evidence would have been insufficient to convict him.  *Id*. at 12.

Petitioner's claim in this Court that there was some other basis for counsel to discredit McClellan is vague and conclusional.  Such vague and conclusional assertions do not provide a basis for federal habeas relief.

In his state postconviction motion, Petitioner argued that counsel should have presented evidence that McClellan had an encounter with Petitioner two weeks prior to the burglary, following which McClellan trespassed Petitioner from his property.  The state court found that counsel was not ineffective for deciding not to present evidence of the previous incident to the jury; there was no allegation that McClellan lied or denied knowing Petitioner prior to the burglary and no suggestion that McClellan and Petitioner had any animosity toward each other.  ECF No. 9-5 at 9.

Petitioner also argued in the state court that counsel did not understand what constitutes burglary.  The state court determined that

counsel's theory was that Petitioner should be found not guilty based on the undisputed fact that no one entered the victim's dwelling and nothing was stolen.  The court concluded that this line of argument did not reflect that counsel did not understand burglary, but that counsel tried to persuade the jury that to convict Petitioner under the circumstances would be an injustice.  Further, counsel did argue to the jury that no one observed Petitioner in the victim's yard.  *Id*. at 12.

To the extent that Petitioner is asserting these same claims, he has failed to show that the state court's assessment of this ineffective-assistance claim was unreasonable.  Defense counsel could reasonably decide that it was not in Petitioner's interests to present evidence that he had been trespassed from McClellan's property two weeks prior to the burglary.  Given the overwhelming evidence against Petitioner, it was a reasonable for counsel to argue that Petitioner should be acquitted based on the lack of evidence that anyone entered or took anything from the victim's house.  On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

### D.  Grounds seven and eight: Counsel's failure to object to prosecutor's statements

Petitioner alleges that his trial counsel was ineffective for failing to object to the prosecutor's "sly implications" regarding fingerprint and footprint evidence.  ECF No. 1 at 16-19.[8]  Petitioner contends that the state elicited testimony from law enforcement officers to imply that evidence from the crime scene (a piece of wooden window frame, concrete, and the chain-link fence) held his fingerprints.  *Id*. at 16.  He contends that in closing argument the prosecutor implied that Petitioner's footprints were at the crime scene when he stated to the jury "common sense, an area of grass, it's hard to get footprints.  The cops may have overlooked them.  Fine."  *Id*. at 18-19; *see* ECF No. 9-3 at 131.

In rejecting these claims on postconviction review, the state court found that the claims were without merit because the state never argued that Petitioner's fingerprints were on any evidence, and never argued that Petitioner's footprints were found at the scene, and therefore counsel did not err by failing to object.  ECF No. 9-5 at 16.  As summarized above, the trial evidence was clear that Petitioner's fingerprints were *not* found on any

---

[8]These are addressed as claims six and seven in the Response.  ECF No. 9 at 17-18.

evidence and no footprints were found.  As the state court found, the prosecutor's closing argument was not contrary to that evidence.  ECF No. 9-3 at 125-31, 136-41.  These claims lack any factual support in the record.

On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

### E. Ground Nine: Counsel's failure to investigate testimony

Petitioner contends that trial counsel was ineffective for failing to investigate whether McClellan could see McCray's residence based on the sight line and lighting.  ECF No. 1 at 20-21.[9]  The state court rejected this claim, finding that McClellan's position and the lighting were irrelevant because the witness had known Petitioner for years and testified that Petitioner approached him from McCray's yard.  ECF No. 9-5 at 17.

As summarized above, McClellan unequivocally identified Petitioner as the person who approached him and threatened him in his yard on the night of the burglary.  Further, counsel did cross-examine McClellan regarding the position of his property relative to McCray's and McClellan

---

[9]This is addressed as claim eight in the Response.  ECF No. 9 at 19.

testified that his view of McCray's house was unobstructed.  ECF No. 9-3 at 44.  And, as the state court found, McClellan's identification of Petitioner was based upon Petitioner approaching within six feet of him where he was "absolutely" close enough for McClellan to see clearly who it was, and not based on observing him at McCray's house.  *Id*. at 31.  Thus, there was no basis for counsel to conduct extensive investigation into McClellan's sight line from his property to McCray's with respect to the witness's identification of Petitioner.

On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

## IV.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section

2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.  Conclusion

It is **ORDERED** that Petitioner's motion for stay and abeyance, ECF No. 30, is **DENIED.**

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1, should be **DENIED** and that a COA should be **DENIED.**

**IN CHAMBERS** this 31st  day of August 2016.

s/Gary R. Jones
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**